United States vs. Vella United States. Thank you. I don't want to change your seats, but the people on the left, the young people on the left row are welcome to come forward. There are seats if you prefer. You can stay where you are if you'd like. You're going to stay where you are. Okay. Thank you. It's the mother in me. That's why I fold. It's because he wanted to see some Jersey dust. Good morning, if it's still morning. Good morning. Alan Zegas on behalf of Raymond Vella. Your Honors, Rule 410 states, of the Rules of Evidence, states general rule that statements made in the course of plea discussions not resulting in a plea of guilty are not admissible in any criminal proceeding. That's a general rule, the purpose of which is to encourage free discussion during the course of plea negotiations. There are, indeed, certain exceptions to the rule, one of which is directly implicated in this case, and that occurs when there is what is commonly referred to as a proffer agreement. And here, a proffer agreement had been entered into between Mr. Vella and the government. And the proffer agreement carves out an exception to this general principle that safeguards negotiated discussions between the government and counsel. What's your best argument, counsel, for why the reference in the opening and in the cross-examination didn't open the door? I mean, the government obviously jumped on it. Judge Thompson considered it. I think there were a couple of submissions before the government was allowed to get into it before the jury. I was just about to land there. Okay. I apologize for being a little bit slow at arriving. But the proffer agreement provided for limited exception. One is for purposes of cross-examination. Secondly, to rebut the following. Any evidence or arguments offered on the behalf of the defendant. Now, the government immediately sought to use the proffer agreement upon the opening statement made by counsel. The opening statement is not an argument, nor is it evidence. And courts instruct juries routinely that opening statements are not arguments. No, they're not. The opening statement is intended to offer a foreshadowing of the case that the defendant or the government anticipates putting on. But it is not intended to be argument. And I certainly heard judges admonish lawyers who sought to use the opening statement to advance an argument and say to lawyers, opening statements are not arguments. Yeah. Well, obviously you're drawing the distinction between argument in closing and the absence of argument per se in openings. Fine. But clearly nothing went before the jury before there was also reference in examination. Right? I mean, this wasn't put before the jury before there was also reference in cross-examination of government. The government immediately sought to introduce proffered statements upon the opening statement of defense counsel. They sought, but the judge didn't rule on it right then. Right? I mean, there were a couple of submissions before the judge ruled on it. Well, at that time the defense attorney did not object because I believe that defense counsel did not appreciate what it was that the government was seeking to do. Thereafter, there was examination of the government witnesses. And again, the subject of Home Depot was raised. All that occurred during the proffer sessions was that the defendant said nothing, remained silent on the subject of Home Depot. There was silence. That silence. No, there wasn't silence. He was asked to identify all recent meetings with Mr. Rose. And he responded. He gave an affirmative response. He testified to a list of the, or to a number of meetings. And he did not include the. If you get behind the silence to the testimony offered by the FBI agent, yes, you arrived there, Your Honor, but you should never get to that point because the fact is that the silence in and of itself does not contradict anything that was offered by way of the direct examination or the cross-examination by defense counsel of the government's witnesses. Well, clearly the argument by the government was you take the reference in the opening and then you take the specifics of the cross-examination of the government's witnesses. You put two together, and they're not going to, their position is they're not going to wait until closing. They think that the examination and the statement in opening foreshadow what's to come. And they seek the courts imprimatur to interject. And I guess I'll go back to the question I asked you a few minutes ago, which is what's your best evidence, argument that this is a violation of 410? It is exactly that, Your Honor, that there is, in order to foster discussions, open and honest discussions between government and defense counsel in the hope of protection. And this proffer agreement was intended to provide that degree of insulation. And it was never breached. And omitting a critical meeting and then seeking the jury to infer that the intent of the proffer agreement, and that is that the person proffering information would fully disclose their entire or the entirety, I should say, of their knowledge. What the defense attorney was saying in the opening initially was you've heard the government jury give his opening statement. I want you to listen carefully to what Frank Rose has to say. I want you to listen carefully to those details. Because I submit to you when you hear what he has to say, what he has to say is not accurate. And you're to conclude that it's not accurate. And then he examined a few other witnesses where the words Home Depot came up. But I submit to this court that simply because the words are used is not an open invitation for the government to bring in the proffer statement. It's not. It's clearly not. So your view is that there's nothing that could be inferred from the cross examination and coupling that with the opening for one to hear that and not intuit that the defense attorney's intent is to lead the jury to believe that this Home Depot meeting was entirely innocuous? I mean, that's the whole government's point, that the defense attorney was trying to lead the jury to believe that that's an innocuous meeting and that clearly they have evidence to the contrary. But more important, that there was nothing about the meeting mentioned in the proffer statement. The purpose was to cause the jury to believe that, A, the defendant did not have the mens rea necessary to commit the crime and that the government's principal witness and only witness truly against the defendant was not a credible person. And because he was not a credible person and there was no other evidence against the defendant but for this person's word, that the defendant could not be convicted. That's the essence of what was going on. And the defendant had every right to do exactly what he did without that being an open invitation for the government to use the proffer agreement. And the decisions that are cited by the government do not say otherwise. A defendant is permitted to challenge the government even in the face of a proffer agreement and maintain his innocence and challenge every single element of the charge defense and put the government to its proof without that being an open invitation for the government to bring in statements that were made during an insulated proffer session. In your view, the failure to mention the Home Depot didn't fairly counter and cast doubt upon the claim that the meeting was innocuous?  I think it would be otherwise, Your Honor, if it came back this way. If Mr. Vella were asked during the course of the proffer session, Mr. Vella, did you have a meeting three weeks ago with Frank Rose at Home Depot? And Mr. Vella's response was no. I think then it would be admissible. But in the context in which simply Home Depot not having been mentioned, in the context of this meeting, I would submit does not invite any statement made during the course of the proffer session to be introduced. And the silence is completely ambiguous. And in this context, it is entitled to insulation because it serves a greater purpose. On cross-examination, the agent did admit that he had not been asked specifically about the Home Depot meeting. That's correct, Your Honor. And I think that that is a very important admission on the part of the agent. And I think that had that question been asked, my opinion would certainly change. But here, and we cite cases that say so, where it is simply silence, the silence itself is not contradictory of any of the statements that are at issue here. And I know it may seem hyper-technical. But it is a very important principle because silence in our system of justice has an important place. And certainly, if asked directly. But not in a proffer agreement. I mean, we get the constitutional illusion that you're referring to. But, you know, when you're appearing for a proffer session, it is anticipated by the government and by counsel for the defense and hopefully the defendant that he or she will fully disclose their knowledge as to the subject matter that they're being questioned. No doubt, Your Honor. And I've been in that position representing defendants in those very circumstances. And I can tell Your Honor, and I'm sure Your Honor in past life have been in circumstances where perhaps a question had not been asked directly. And for that reason, an answer may not have been given. You're not suggesting that the following question wasn't asked. Tell me all the meetings that you were in with Frank. I'm not saying that the question wasn't asked, Your Honor. And I'm saying to Your Honor that specifically not mentioning Home Depot, being silent on that question in these circumstances does not invite the proffer to be used in the context that it was used in here. That being the limited statements that were made by defense counsel in opening and the very limited questions that were asked of the government witnesses by defense counsel. We're going to run out of time here quite quickly. Let's move to what you described as. Excuse me. I just didn't get a question. What's your best case? Frankly, Your Honor, I think that is compelling. But also a very serious Brady violation occurred, which is really no different than. On the profit point, what's your best legal case? I'm sorry. I'm not quite sure that it goes beyond what I have offered to the court, Your Honor. Okay. No, literally the case. United States versus. That's what you're being asked. Well, I don't think that, for example, Barrow. Barrow itself. That's what I wanted to say. I think Barrow itself suggests that there is no waiver through cross-examination in challenging a witness's perception or recollection of events. And that's exactly what occurred here. There's a challenge to a witness's recollection of events and the accuracy of perception, and that is permissible cross-examination that does not invite use of the proffer. Answer Judge Stevens' question. You refer to an issue as the Brady issue, and this is the failure to disclose before trial that Frank had taken a bribe from his cousin. That's correct. Okay. Tell me. I have a very basic question. Why is that Brady material? How does that exculpate or provide cross-examination period, cross-examination ammunition for your client? Well, first of all, it was the cousin of Frank Rose that was paying the bribe. So, A, Frank Rose was insulating his cousin by not making an earlier disclosure, and that is impeaching of Frank Rose because, A, it looked like he was protecting his cousin. Secondly, Mr. Vella himself was claiming that he had never paid a bribe and that he was among the class of persons who could do business with Mr. Rose without paying a bribe when the government brought in a host of people who said in order to do business with Mr. Rose, you had to pay a bribe, and therefore Mr. Vella was guilty. Right, but there was no dispute that there were, what, four other contractors who didn't pay a bribe. Right, but this was impeaching in multifaceted ways, and maybe others had the defendant known. Now, don't forget, the other side of this is that the government knew weeks in advance of the trial of this information, never said anything to the defendant about it, and they had an absolute obligation, and yet here Mr. Vella is being criticized for not talking about the Home Depot meeting, which occurred three weeks before his proffer session. It seems quite hypocritical to me for him to be in this position. Okay, did Mr. Rose testify that he did not take a bribe from his cousin? He testified that he told the- You said it's impeachment material of Mr. Rose. He didn't tell the government for over a year that he took a bribe, and after a year passed he finally acknowledged that he did, and then at trial he admitted that he did for the first time to the defendant. He told the government that fact two weeks earlier. Was there any anticipation that at trial he would get into holding another bribe for, it was to get a position in the government, right? It didn't have to do with a contract bidding scheme. It had to do with a bribe to help get him a job. To this day we don't know what happened because we're relying completely upon what was said at trial having been given no opportunity to investigate, and that's what Mr. Taylor was requesting of the judge at trial, the opportunity to investigate, having just learned of the issue. I'm sorry, did he come back and object on the record? What happened was Mr. Taylor had asked, wanted a sidebar. The judge refused to give a sidebar. I think she said, pass me a note, which he did. Yeah, but then there was no objection placed on the record. I think there were two things that happened, Your Honor. I think that a note was passed off asking for, saying that he was prejudiced and needed to investigate, and I think that a second time around he maybe wrote a letter or gave another note, but again saying that he was prejudiced and wanted to investigate, something to that effect. Please do me a favor as you listen to your colleague. Just check the record and see whether there is an objection on the record. I don't believe there's an objection. I think what happened was he expressed it in the way that I'm suggesting, saying that he's prejudiced because he was denied the opportunity to investigate, but I could try to find that in the record, that reference. I don't think it was put in terms of an objection. Okay, very well. But I think it was an objection expressed in different terms. Thank you. Okay. Thank you. We'll hear from the government. Good morning. Almost good morning. Good morning. It's still good morning, I think. Oh, okay. I know. Good morning it's been. It is. I'm Stephen G. Sanders, an assistant United States attorney on behalf of the United States, the appellee in this matter. Let me go back to the first issue that was discussed and I'll come to the giglio issue. A trial is a search for the truth, right? That is a basic proposition. Judge Thompson cited that proposition when she made her ruling on this issue. And in fact, one of the first rules of the Federal Rules of Evidence say that the rules must be construed to the end that the truth may be ascertained and the proceedings justly determined. So what does that mean? Sure. When you sign up a proffer agreement, as Judge Greenaway said, you waive your. Please don't talk quite so fast. Okay. I'll slow down. I'm sorry. Okay. You agree to come into the government and answer questions honestly and forthrightly. And I didn't include the foundation that we laid in my brief, but it's in the record with the agent's testimony that there were, the witness was admonished, Mr. Bella was admonished, answer all questions honestly and openly. And he didn't just fail to respond to a question. He deliberately lied. I didn't mean to soft pedal it in my brief when I use the term omission, but when you say there are these meetings but not this one, you are affirmatively lying. So he didn't just conceal it. He lied about it. That's issue number one. Number two, he certainly did do more than just mention the Home Depot meeting and try to question or impeach the recollection of Frank Rose about that. There's no other reason for the questioning of the Home Depot witness. Is he a practical joker? Is he always doing that kind of thing? There's no other reason to ask those questions unless, and to get those answers, unless your point is to make an argument, to make an assertion before the jury that this meeting is harmless. It's not reflective of harmlessness of guilt. And that's exactly what he was asking the jury to infer from that. And once he's done that, that's an assertion within the meeting or an argument or cross-examination questions within the meaning of the proffer waiver, and we were entitled at that point to ask Judge Thompson to allow us to put in the fact that he had concealed deliberately this meeting when he was asked about it in his proffer statement. And the rebuttal issue is quite simply, as you said, if the meeting is so harmless, why lie about it? And that is certainly fair rebuttal. I mean, if we had not had this issue come up and it had simply come up with the defendant testifying in his own defense and he tried to neutralize the meeting in his testimony, we could have gone right to this issue on cross-examination, which we did, by the way, without objection from the defendant. He never claimed that that was improper cross-examination. So if it's proper impeachment and proper cross-examination when he's testifying, it's certainly proper rebuttal under the proffer agreement. Do you want us to consider waiver? Waiver? You just mentioned that when the defendant was on, there was no objection. Well, I'm trying to make an analogy. In other words, if he hadn't done what he had done with the questions of the witnesses but had simply taken the stand in his own defense and testified just as he did, and that is testified about the Home Depot meeting and said, you know, it was a dumb thing, it was harmless, but I just wanted to talk to him about the fact that I'd been visited by some agents, we could have gone on cross-examination just as we did. He's triggered the proffer agreement, obviously. We could have said, well, if it's so harmless, such a dumb mistake, why didn't you tell us that when you were here? And we wouldn't say it that way. You know, did you sit for proffer? We would do it that way. And if we still denied it, then we would call the agent in rebuttal and we would complete the impeachment by contradiction, which is essentially what it would be. So I'm just making that argument by way of analogy. Mr. Zegas said Barrow is his best case. It's actually our best case because on pages 120 through 121 of that opinion, Judge Raggi goes through several Second Circuit cases which directly contradict the argument that my friend made, which is that you don't need a direct contradiction for something to rebut. There are at least three or four cases cited on those two pages of her opinion which show arguments just like this where if a defendant testifies, I'm not the kind of person who would engage in violence, the direct contradiction would be if you had a statement from the defendant at another time that he is prone to violence. But just as proper rebuttal indirect is to put on a prior conviction for assault of type conduct. So those two pages of Judge Raggi's opinion for the Second Circuit I think support our argument. I know this Court didn't address in Hardwick what the term rebut means in our proffer agreement, but this Court was very cited and quoted Barrow approvingly and I think there's no reason to reach a different result. Now if I may, unless the Court has any other questions on this issue, I'm happy to turn to the Giglio issue. All right. First issue here is we did not learn this information weeks in advance of the trial. We learned it within a few days before the trial started. And because this was by way of explanation only and not by way of excuse, because there were two assistant U.S. attorneys assigned to this trial, one who was responsible for getting out the Giglio letters and the other one who was responsible for preparing individual witnesses, the assistant who was preparing this witness believed that this new piece of information had been conveyed to defense counsel. What you're telling us is that the U.S. Attorney's Office in New Jersey has lots of people. No, I'm just saying we do have a lot of people. We apologize profusely that we did not disclose this when we learned it, but it was an inadvertent nondisclosure and we certainly weren't trying to hide anything since we elicited it on direct examination of Mr. Rose. So that's the first point I'd like to make. So it's been disclosed and fronted. And the second issue, Judge Brewer, you asked about the preservation. Can I just ask you one question about that? Sure. The timing, I understand bolloxing it up, but you had it prior to trial, and my understanding is it wasn't disclosed until during trial, and my other understanding is it wasn't a particularly long trial. That's correct. I think it was about two weeks. Yeah, I don't think that's particularly long. Okay. I just wanted to make sure I had the facts. You did. And, again, I apologize. On behalf of our office, we certainly strive to do better than this, and it certainly was not an intentional nondisclosure, and we fronted it through the questioning of our witness, so we certainly were not trying to play hide-the-ball with this. Now, when this information – Are you saying that the evidence was not material? That's exactly what I'm saying, and I have several arguments why. And I don't need to quibble over the standard of review and whether it was preserved or not. The issue of whether it was properly objected to, I know that the trial counsel attempted to submit a note to the judge. We don't know what the content of that note was. Mr. Taylor, later at the motion for a new trial, referred to the fact that he tried to pass a note, but I think it was just to tell the judge, hey, we're learning something for the first time, and that's the reason why Judge Thompson didn't feel any need to interrupt the direct examination because it was information helpful to the defense, and he wasn't certainly objecting to impeachment information coming out that only benefited the defense. I understand you don't have the note. Are we to understand this, this note was the manner in which he objected? From my understanding, I think he was attempting to convey to the judge, I'm hearing something for the first time that should have been disclosed. It's pure speculation to say that the note, which I've looked for and I can't find, by the way, it's pure speculation to say that the note contained a request for a continuance or any sort of request to stop the trial so that defense counsel could go investigate it. And, in fact, you would think that if that were the key prejudice to the defense, then at the next opportunity, whether it be when the court takes a break at the end of the witness testimony or for lunch or at the end of the day, the defense attorney would have stood up and said, Your Honor, let's address this right now. This is new information. If I investigate this, I might be able to find out something really useful for my defense, not just be able to use it on cross-examination and summation. And there's no request for time or objection on the record. Is that right? That's correct. But even under if you apply the normal standard review for Rule 33 motions, I don't see how the defendant has carried his burden of showing a miscarriage of justice, and that is because Judge Thompson understood that this was an additional piece of impeachment information. We had already disclosed the fact that he had taken hundreds of bribes. I mean, he's been doing this scheme for 10 years, and he's taken hundreds of bribes. So this is an additional bribe from his cousin. Yes, he got out the fact on cross-examination that it's another crime not covered by his agreement with the government, but, of course, it's also a crime that couldn't be prosecuted because it was according to his own testimony 10 years ago. But he got that out, he used it in summation, and has only offered speculation to this court of how he might use it if he were to get a new trial. And that, under the Maynard decision, which I realize is non-presidential, but has a very good analysis of how you evaluate these claims, that's not enough. And, of course, this court has its own published decision in Kaplan, which sets forth the same analysis. And in Kaplan, by the way, the defense attorney did ask for and did receive a continuance to evaluate what I understand were hundreds of new documents and still raise the claim of prejudice after trial, which this court rejected. If the court doesn't have any other questions for me, I'm happy to give up the rest of my time. I'm content. Oh, I have nothing. Fine. Thank you very much. Thank you. Let me just quickly refer your honors to the section of the transcript where there's a reference to the note. And I also have not seen the notes. DA 328-12 is the section where defense counsel had requested a sidebar, was denied it, and then had apparently tendered a note to the court. And then at the conclusion of trial, the appendix reference is DA 1367-8. And I would submit that particularly given at the end of trial, trial day? No, I believe it was the post-trial motions, Your Honor. Oh, okay. DA 1367 to DA 1368. And I submit that particularly given the claim that Mr. Vella had concealed the details about Home Depot, it was particularly important for Mr. Vella's counsel to be able to explore under these circumstances Mr. Rose's concealment of what he had done with his cousin. Why isn't it cumulative? Because the government is hammering away at Mr. Vella for hiding information about Home Depot at the very time that, A, the government has information about Mr. Vella, about Mr. Rose, which it doesn't turn over to Mr. Vella, which is terrible. And Mr. Rose had the information about his cousin that he didn't tell the government about for a full year. I hear all that, but help me now. Counsel, defense counsel, albeit late, I understand, had the opportunity to cross on this information? He really didn't. All of this was on the spur of the moment. He learns this suddenly. Your Honor, put yourself in that position. You were defense counsel. You suddenly learned from the witness of this. You don't want to hear my response to that question. I don't know. It's going to be purely speculative on your part, Your Honor, just as it will be on mine. But put yourself in that position. And you know what he did? The defense attorney asked the judge to go to cyber, something as simple as that, so he could address the court. And Her Honor said no. And then he tries to pass her a note, and she takes the note and still says no, we're going to go on. Okay, we're going to run out of time. Tell me, wait a minute, assuming you had asked for time and been given time to investigate, what is it that you could possibly have found during investigation that you didn't already know that would be helpful? You might have found that the explanation that Mr. Rose had given was patently false. I'm sorry? You may have found that what Mr. Rose said under oath at trial was patently false. Well, he didn't ask him about that. We don't know. We don't know what we would have found if we had investigated. All we know is what he said. That's all we know. Your Honor is accepting, hypothetically, what Mr. Rose said. What I'm suggesting is that if we investigated, and this often happens, you know, we find out through our own defense investigators something very different than what is in the government report, or than what a witness might have testified to at trial. Okay. Thank you. Thank you. Thank you, gentlemen. Thank you. We'll take the case under advisement and go to the last case for today, but not as much.